Filed 2/28/25  In re S.G. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| In re S.G., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.G.,<br><br>    Defendant and Appellant. | A171067<br><br>(San Francisco City & County Super. Ct.  No. JD23-3019) |

N.G. (Father) appeals from a judgment terminating his parental rights over S.G. (Minor) after a Welfare and Institutions Code[1] section 366.26 hearing.  Father argues the San Francisco Human Services Agency (Agency) failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).[2]  We agree and conditionally reverse.

---

[1]  All  statutory references are to the Welfare and Institutions Code.

[2] As ICWA and related California statutes use the term "Indian," occasionally, we likewise do the same for clarity and consistency while acknowledging that individual preferences for other terms may vary.  (See *In re A.A.* (2023) 88 Cal.App.5th 393, 396, fn. 1; *In re G.H.* (2022) 84 Cal.App.5th 15, 27, fn. 2.)

# I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, the Agency filed a section 300 dependency petition seeking to detain then-newborn Minor. The petition alleged Minor came within the jurisdiction of the juvenile court based on D.P. (Mother) and Father's extensive history of fentanyl, methamphetamine, cocaine and heroin use, and the prior termination of Mother's parental rights relative to another one of her children.

The ICWA inquiry attachment to the section 300 petition was not completed. However, a detention report filed by the Agency indicated that a social worker spoke with both parents and the maternal grandmother regarding Minor's ICWA eligibility. In these conversations, Father denied Native American ancestry and Mother claimed Native American ancestry through her maternal uncle who was affiliated with the Yaqui tribe, which she said was based out of North Dakota and South Dakota. The maternal grandmother stated that her brother Robert was affiliated with the Yaqui tribe but indicated the tribe was based near the border of the State of Arizona and Mexico; she also said the family hailed from the Mexico side of the border and did not claim or receive any government benefits based on Native American ancestry.

The day after the section 300 petition was filed, the juvenile court held a detention hearing where Mother and both grandmothers appeared, but Father did not appear. The court inquired as to whether Minor had Indian ancestry, and both Mother and maternal grandmother denied having any "American Indian" ancestry with maternal grandmother stating that the family was "from Senora [*sic*]."[3] The court did not make an ICWA finding at

---

[3] Sonora is a state in northwestern Mexico that shares a border with Arizona and Mexico.

that time but ordered that Minor be removed from the parents and detained in foster care.

In February 2023, Father filed an ICWA-020 form indicating that he had no Native American ancestry.

Before the April 2023 jurisdiction and disposition hearing, the Agency filed a disposition report and addendum report wherein it recommended that no reunification services be provided to Mother, but reunification services be provided to Father. The Agency said that Mother denied Native American ancestry during the detention hearing in January 2023, the paternal grandmother stated in February 2023 that the family did not have Native American ancestry, and Father reported in April 2023 that he did not have Native American ancestry.

At the jurisdiction and disposition hearing held in April 2023, both parents and both grandmothers appeared. The juvenile court sustained the section 300 petition as to jurisdiction but continued the hearing relative to disposition due to a clerical error that precluded the Agency from presenting evidence regarding Mother's prior failure to reunify with one of Minor's siblings. The court also stated that "further inquiry need[ed] to be done on ICWA because the Yaqui tribe is a registered tribe," and it was "not clear" to the court whether the Yaqui ancestry was "on this side of the Arizona border with Mexico or on the other side of the Arizona border with Mexico." As such, the court stated that it would also address the status of the ICWA inquiry at the continued disposition hearing.

Before the May 2023 disposition hearing, the Agency filed an addendum report that included no new information regarding the ICWA inquiry. At the hearing, the juvenile court approved the placement of Minor in foster care, denied reunification services to Mother based on her prior

3

failure to reunify with one of her other children, and provided reunification services for Father. The court then asked about the status of the ICWA inquiry, and a social worker stated the Agency had reached out to the Yaqui tribe shortly after the prior hearing and were awaiting a response. The court then set an ICWA status hearing for July 2023.

In July 2023, the Agency filed an addendum report indicating that it had received a notice back from the Pascua Yaqui Tribe which stated that Minor, Mother, and Father were not members of the tribe, nor did they have applications pending. The Agency reiterated these facts at the July 2023 ICWA status hearing. The juvenile court then found there was no reason to believe or know Minor was an Indian child and that ICWA did not apply.

In November 2023, the juvenile court terminated reunification services for Father as he had not engaged in any services. At the section 366.26 permanency planning hearing held in June 2024, the court terminated parental rights and freed Minor for adoption. This appeal by Father followed.[4]

## II. DISCUSSION

Father contends on appeal that the Agency failed to adequately inquire as to Minor's Native American heritage. We agree and conditionally reverse the judgment to enable the juvenile court and Agency to comply with their inquiry obligations under ICWA.

---

[4] Mother did not appeal from the order terminating parental rights. As a self-identified non-Indian parent, Father has standing to challenge the order terminating his parental rights due to claimed ICWA violations concerning the child's *maternal* heritage. (25 U.S.C. § 1914; *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339.)

4

## A. ICWA Inquiry and Notice Framework

Congress enacted ICWA in 1978 in response to " 'abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi*).) This separation of Indian children " 'contributed to a number of problems, including the erosion of a generation of Indians from Tribal communities, loss of Indian traditions and culture, and long-term emotional effects on Indian children caused by loss of their Indian identity.' " (*Ibid.*) ICWA sought to redress these practices, in part, by "establish[ing] minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes," and allowing an Indian child's tribe to " 'intervene at any point' " in a proceeding involving the removal of an Indian child from their family. (*Dezi,* at p. 1129.)

Whether ICWA applies in a dependency proceeding turns on whether an "Indian child" is involved.[5] (*In re A.A.* (2023) 88 Cal.App.5th 393, 399.) To effectuate timely determinations under the California Indian Child Welfare Act (Cal-ICWA)—ICWA's state analogue—courts and child welfare agencies are charged with an "affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).) This duty of inquiry by the social services agency begins when it is first contacted regarding a child and includes an obligation to ask "each family member,

---

[5] An "Indian child" is defined as "[a]ny unmarried person who is under 18 years of age" who is either "(A) [a] member or citizen of an Indian tribe" or "(B) [e]ligible for membership or citizenship in an Indian tribe and is a biological child of a member or citizen of an Indian tribe." (§ 224.1, subd. (b)(1)(A)–(B).)

5

including extended family members" whether the child is or may be an Indian child. (*Id*., subd. (b)(1).) A similar duty of initial inquiry exists for the court presiding over a juvenile proceeding that could result in placement of a child with someone other than a parent. (*Id*., subd. (c).)

The quality of information obtained by the initial inquiry dictates the subsequent obligations imposed by ICWA, if any, on the juvenile court and the social services agency. Where the inquiry produces a "reason to know" a child is an Indian child, the party seeking foster care placement with someone other than a parent or Indian custodian must provide formal notices to the tribe concerning court proceedings. (§§ 224.2, subds. (d), (f), 224.3.)

If, on the other hand, the initial inquiry does not provide a reason to know, but instead presents a "reason to believe" the child is an Indian child, then the court and the social services agency are responsible for promptly pursuing further inquiry regarding the possible Indian status of the child. (§ 224.2, subd. (e).)

## B. *The ICWA Inquiry*

### 1. **Standard of Review**

When a juvenile court finds that ICWA does not apply to a child, " ' "[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) "The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' [Citation.] Some courts apply a straightforward substantial evidence test when reviewing the juvenile court's conclusion that ICWA does not apply. [Citation.] 'By contrast, other courts have used a hybrid standard, reviewing for substantial evidence whether there is reason to know a minor is an Indian

6

child, and reviewing a finding of due diligence and proper inquiry for abuse of discretion.' " (*Dezi, supra*, 16 Cal.5th at p. 1134, fn. omitted.) Where "there is an *inadequate* inquiry and the record is underdeveloped, it is impossible for reviewing courts to assess prejudice because we simply do not know what additional information will be revealed from an adequate inquiry." (*Id.* at p. 1125, italics added.) Under such circumstances, conditional reversal may be necessary to allow the error to be cured "and thereby safeguard the rights of tribes, parents, and the child." (*Id.* at p. 1141.)

### 2. Adequacy of the Agency's Inquiry

Father argues that conditional reversal of the termination of his parental rights is warranted because the Agency failed to adequately inquire of Minor's relatives who were affiliated with a Yaqui tribe, including a maternal great-uncle, and failed to adequately document that inquiry. Father's arguments are well taken.

Under section 224.2, subdivision (e)(1), there is "reason to believe" a child involved in a dependency proceeding is an Indian child "whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe."[6] This "reason to believe" triggers the duty to "make further inquiry regarding the possible

---

[6] Section 224.2, subdivision (e)(1) goes on to state that "[i]nformation suggesting membership or eligibility for membership *includes, but is not limited to*, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know" a child is an Indian child as set forth in subdivision (d) of the statute. (Italics added.) Section 224.2, subdivision (d), in turn, provides there is "reason to know" a child may be an Indian child if the court is informed the child is an Indian child, the residence or domicile of the child is on a reservation, or the court is informed the child is or has been a ward of a tribal court, among other things.

Indian status of the child" and to make that inquiry "as soon as practicable." (*Id.*, subd. (e).) Further inquiry includes but is not limited to interviewing the "parents, Indian custodian, and extended family members" to gather information required under section 224.3, subdivision (a) for purposes of providing a tribe with the names, addresses and birth dates of the child's biological parents, grandparents, and great-grandparents; contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the names and contact information of tribes in which the child may be a member or citizen; and "[c]ontacting the *tribe or tribes and any other person that may reasonably be expected to have information* regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2), italics added.)

Courts have held that sections 224.2 and 224.3 require social services agencies to make a "meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (See *In re K.R.* (2018) 20 Cal.App.5th 701, 709 (*K.R.*) [holding inquiry inadequate where agency sent notices to three Cherokee tribes with information relating to some paternal relatives but record was silent as to whether it contacted the child's paternal grandfather and paternal great-grandmother]; see also *In re L.B.* (2023) 98 Cal.App.5th 512, 519 (*L.B.*) [holding inquiry inadequate when juvenile court only asked child's parents about Indian ancestry despite the fact other family members were known to the agency including a maternal aunt, paternal grandmother, maternal cousin, and two other maternal family members]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 430–431 [failure to inquire of maternal relatives constituted insufficient inquiry despite parents and paternal family denying Indian heritage].) The juvenile court "has a responsibility to ascertain that

8

the agency has conducted an adequate investigation." (*K.R.*, at p. 709.)

Further, under California Rules of Court, rule 5.481(a)(5), which "parallels the inquiry and notice statutes of sections 224.2 and 224.3," a petitioner in a dependency proceeding is required to " 'include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes.' " (*Dezi*, *supra*, 16 Cal.5th at p. 1131, fn. 5; see also *H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 966 [agency reports must discuss what efforts were undertaken to locate and interview family members with pertinent information].) The court cannot assume that merely because "*some* information was obtained and relayed to the relevant tribes," that the agency "necessarily complied fully with its obligations." (*K.R.*, *supra*, 20 Cal.App.5th at p. 709.)

Here, the Agency failed to adequately inquire as to Minor's Indian ancestry and provided insufficient documentation regarding its inquiry efforts. It was apparent from both the initial detention report filed by the Agency and the initial detention hearing held in January 2023 that Mother and the maternal grandmother identified possible Indian ancestry through a maternal great-uncle (Robert) who was affiliated with a Yaqui tribe. And though the maternal grandmother indicated the family was from the Mexico side of the border and did not claim "American Indian" ancestry, these initial statements regarding a family member's affiliation with the tribe supplied the juvenile court and the Agency with "reason to believe" Minor may be an Indian child. (See, e.g., *In re T.G.* (2020) 58 Cal.App.5th 275, 292 (*T.G.*) [mother's statement she believed she had Cherokee ancestry on her maternal side and possible Indian ancestry on her paternal side "unquestionably

9

provided reason to believe" Indian children may be involved in the dependency proceeding].)

Notwithstanding this fact, the record does not indicate the Agency made an effort at this juncture to further investigate the issue of Minor's possible Yaqui ancestry through the maternal great-uncle. Instead, it appears the Agency rested solely on the maternal grandmother's statement that the family was from Mexico and saw no need to look further. This seems evident from the fact that the Agency's subsequent disposition and addendum reports omitted the prior references to the Yaqui tribe entirely and merely conveyed that "[M]other stated at the detention hearing on 1/24/23 that she did not have any Native American ancestry."

At the April 2023 jurisdiction and disposition hearing, the juvenile court recognized a need for more information when it stated that "further inquiry need[ed] to be done on ICWA because the Yaqui tribe is a registered tribe," and it was "not clear" to the court whether the Yaqui ancestry was "on this side of the Arizona border with Mexico or on the other side of the Arizona border with Mexico." Nonetheless, even after that directive, it appears the Agency's efforts to investigate the issue of Minor's possible Yaqui ancestry were minimal and incomplete.

At the continued disposition hearing held in May 2023, when the juvenile court asked about the status of the ICWA inquiry, the Agency stated it had reached out to the Yaqui tribe and was waiting for a response; thus, another hearing was scheduled to address this issue. Then, shortly before the ICWA status hearing in July 2023, the Agency filed an addendum report stating it had received a notice from the Pascua Yaqui Tribe in May 2023 which indicated, "the family are not members nor do they have applications for membership pending." The report included an attached letter from the

10

tribe which—on its face—appears to indicate that the Agency only provided the tribe with the names of Minor, Mother, and Father. It stated: "The Pascua Yaqui Tribe's Enrollment Department has indicated that [Minor], the minor child, [Mother], the mother, and [Father], the father, are not members of the Pascua Yaqui Tribe, nor do they have applications for membership pending." Significantly, the letter did not include the names of either the maternal grandmother or the maternal great-uncle, the family member affiliated with the Yaqui tribe. And the record is silent as to what other inquiries the Agency made, if any, relative to other family members of the Minor to explore the child's possible Yaqui ancestry. Despite the absence of such inquiries, at the end of the ICWA status hearing, the court concluded there was no reason to believe or know that Minor was an Indian child and that ICWA did not apply.

This was error. As stated, *ante*, agencies are required to make meaningful efforts to contact extended family members who may have pertinent information regarding a child's Indian ancestry (*K.R.*, *supra*, 20 Cal.App.5th at pp. 708, 709; *L.B.*, *supra*, 98 Cal.App.5th at p. 519) and to document such inquiry efforts (*Dezi*, *supra*, 16 Cal.5th at p. 1131). Here, however, there is no indication the Agency contacted the maternal great-uncle, and the Agency's explanation on appeal that it did not know whether the maternal great-uncle was alive or accessible for interview is unavailing. The availability of the maternal great-uncle was precisely the sort of information the Agency should have pursued in its ICWA investigation. It likewise does not appear that the Agency made efforts to expand its inquiry to additional relatives who might have information regarding Minor's potential Yaqui ancestry. Further, despite the fact both Mother and the maternal grandmother reported that the maternal great-uncle was connected

11

to a Yaqui tribe, the record is silent as to whether the Agency provided the Pascua Yaqui Tribe with his name and contact information. The May 2023 response received from the tribe suggests the maternal great-uncle's identity was not shared with them. This omission was significant. It undermined the purpose of ICWA "to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child and whether it wishe[d] to intervene in the proceedings." (*K.R.*, at p. 708.)

The Agency's arguments to the contrary are unpersuasive. The Agency first asserts that its duty to further inquire as to Minor's Native American ancestry was never activated because the initial inquiry (involving Mother, Father, and both grandmothers) "yielded credible information that [Minor] was not an Indian child." Specifically, the Agency argues that the maternal grandmother's claimed ancestry from Mexico does not provide a "reason to believe" the Minor is an Indian child as ICWA applies only to federally recognized tribes within the United States. (See 25 U.S.C. § 1903. [" 'Indian tribe' " means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary of the Interior].)

This argument is flawed. At the outset, the Agency itself acknowledges that there is, in fact, a federally recognized Yaqui tribe in the United States located in Arizona. This information is consistent with the maternal grandmother's statement in the initial detention report that the Yaqui tribe with which her brother was affiliated was based near Mexico and the State of Arizona. These facts provided the Agency with ample "reason to believe" that Minor was an Indian child and trigger a duty of further inquiry. (See *T.G.*, *supra,* 58 Cal.App.5th at p. 292.) Notably, the Agency presented no evidence to the juvenile court, and cites no authority on appeal in support of the

12

proposition that the Yaqui tribe in Mexico is distinct from the federally recognized Yaqui tribe in the United States. Nor does it argue or demonstrate that children descended from Yaqui tribe members in Mexico cannot otherwise be "[e]*ligible* for membership or citizenship" in a Yaqui tribe in the United States. (§ 224.1, subd. (b)(1)(B), italics added.) These precise questions could have been explored by further inquiry directed to the Pascua Yaqui Tribe, the Bureau of Indian Affairs, and other persons and entities that might be reasonably expected to have information regarding eligibility. (See § 224.2, subd. (e)(2)(B).)

*In re E.W.* (2023) 91 Cal.App.5th 314 (*E.W.*), cited by the Agency, is distinguishable and does not persuade us that the inquiries in this case should be viewed as adequate. In *E.W.*, the mother initially indicated that maternal grandmother had some Native American ancestry but later made repeated representations that she lacked such ancestry herself as she completed genetic testing that revealed no Native American ancestry. (*Id.* at p. 322.) Under these circumstances, the *E.W.* court was not persuaded the ICWA inquiry was inadequate because the mother's repeated representations she had no Native American ancestry coupled with interviews with a few extended family members reliably answered the question whether the children were Native American children. (*E.W.*, at p. 323.) Here, in contrast, the question of Minor's ancestry was not reliably answered given the Agency's failure to investigate the one relative (maternal great-uncle) known by Minor's family to be affiliated with a Yaqui tribe and the lack of information concerning Minor's eligibility for membership with the Pascua Yaqui Tribe through the maternal great-uncle's affiliation. Nor does the record illustrate that when asked, the Pascua Yaqui Tribe had information

13

concerning the maternal great-uncle such that it could properly assess Minor's eligibility.

The Agency further argues that even if its duty of further inquiry was triggered, the steps it took satisfied its obligations under ICWA. The Agency asserts that section 224.2, subdivision (e) does not require any particular form of documentation and that contact with the tribes can be informal. As such, it concludes it was not required to file the letter it sent to the Yaqui tribe or detail the information provided to the tribe. Nor did the Agency perceive any reason to contact the maternal great-uncle given the maternal grandmother's explanation the family was from Mexico.

While it is true agencies are not required to submit any particular form of documentation in their further inquiries, as previously stated, "[w]hen there is an inadequate inquiry and the record is underdeveloped, it is impossible for reviewing courts to assess prejudice because we simply do not know what additional information will be revealed from an adequate inquiry." (*Dezi*, *supra*, 16 Cal.5th at p. 1125.) As already discussed, the record here is silent as to a number of important details, including whether the Agency attempted to contact the maternal great-uncle and whether it provided information relating to the maternal great-uncle in its notice to the Yaqui tribe. Accordingly, the juvenile court's ICWA finding on this record was not supported by substantial evidence and the court abused its discretion by concluding otherwise. Here, the appropriate remedy is to conditionally reverse the judgment so the Agency can comply with its ICWA inquiry obligations and adequately document its efforts to do so.

Upon conditional reversal, the Agency shall conduct additional inquiry which should include, at a minimum, contact with the maternal great-uncle, documentation of the Agency's efforts to contact him, inquiry as to whether

14

any other maternal relatives have information relating to possible Yaqui ancestry, and documentation of an inquiry regarding the relationship between the Yaqui tribes in the United States and Mexico and membership eligibility issues between the tribes. Following this additional inquiry, the juvenile court shall hold a hearing to determine if, in light of the outcome of the inquiry as documented, ICWA applies. If the juvenile court determines the inquiry is proper, adequate, and duly diligent and concludes that ICWA does not apply, any inquiry error is cured, and the judgment would be reinstated. Alternatively, if the inquiry reveals a reason to know Minor is an Indian child and ICWA applies, then the judgment must be reversed.

### III. DISPOSITION

The order terminating parental rights is conditionally reversed to allow the Agency to comply with ICWA, consistent with this opinion.

SMILEY, J.

WE CONCUR:

BANKE, ACTING P. J.

LANGHORNE WILSON, J.

A170167
*In re S.G.*